## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re:<br><br>**MICHAEL V. ANDERSON,**<br>**and MELISSA K. ANDERSON,**<br><br>Debtors. | **Bankruptcy Case**<br>**No. 14-40180-JDP** |

_____

| | |
|---|---|
| **GARY L. RAINSDON,**<br>**TRUSTEE,**<br><br>Plaintiff,<br><br>vs.<br><br>**MICHAEL V. ANDERSON,**<br>**and MELISSA K. ANDERSON,**<br><br>Defendants. | **Adv. Proceeding**<br>**No. 14-8053-JDP** |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Michael V. Anderson and Melissa K. Anderson, Ammon, ID, pro se.

MEMORANDUM OF DECISION – 1

Gary L. Rainsdon, chapter 7 trustee, Twin Falls, ID, pro se.

### *Introduction*

This case presents the unhappy situation where the chapter 7[1]

debtors, without seeking advice of counsel, mistimed the filing of their

bankruptcy petition and, for flawed reasons, elected not to comply with the

Court's orders entered in their bankruptcy case.   As a result of their

actions, the debtors are not entitled to a discharge.

Chapter 7 trustee, Gary L. Rainsdon ("Plaintiff") commenced this

adversary proceeding against debtors Michael V. Anderson and Melissa K.

Anderson ("Defendants") seeking a denial of their discharge and a money

judgment for the funds they failed to turn over to him that were property

of the bankruptcy estate.   A trial was held on January 14, 2015, at which

the parties appeared, pro se; following its conclusion, the Court took the

issues under advisement.   The Court has now considered the testimony,

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule"
references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 2

evidence, and the parties' arguments, as well as the applicable law.  This

Memorandum constitutes the Court's findings of fact and conclusions of

law and decision in this action.  Fed. R. Bankr. P. 7052.

### *Findings of Fact*

On March 5, 2014, Defendants had their 2001 Pontiac Bonneville

repossessed by a creditor.  Exh. 107, p. 4.  That same day, they wrote a

check on their East Idaho Credit Union ("Credit Union") checking account

in the amount of $1,116 to the repossessing creditor in order to regain

possession of the vehicle.[2]  *Id.*; Exh. 102.  Despite assurances from the

Credit Union that the check to the creditor would clear their account on

March 6, it did not actually clear until March 7.  On March 6, 2014,

Defendants filed their chapter 7 bankruptcy petition.[3]  BK Dkt. No. 1.

Thus, at the time they filed the petition, the $1,116 remained in the Credit

---

[2]  The amount necessary to recover the vehicle was actually $1,400, but as Defendant Michael Anderson testified, he "cleaned out" the Credit Union Account, and used other funds in order to come up with the necessary payment.

[3]  Case No. 14-40180-JDP.  The Court refers to the docket in the bankruptcy case as "BK Dkt." in order to distinguish it from the docket in this adversary proceeding.

MEMORANDUM OF DECISION – 3

Union account.  *Id*.

On April 21, 2014, a continued[4] § 341 meeting of creditors was held.

During that meeting, Plaintiff explained to Defendants that on petition

day, the Credit Union account ending in 1001 held $1,353.69 and a second

account ending in 2055 at the same institution held $185.83.  Exh. 107, pp.

8-9; *see also* Exhs. 102, 103.  The following exchange then occurred:

> TRUSTEE:   So yeah, I need to have that money turned over
> $1353.69 from the one account and $185.83 from the
> other account.

> MR. ANDERSON:  Ok we will have to see what we an do to get you
> that.

*Id*.

As in every chapter 7 case filed in this District, on the same day the

petition was filed, in this case March 6, 2014, an Income Tax Turnover

Order was issued by the Court to Defendants.  BK Dkt. No. 8.  By its terms,

it required Defendants to:  1) file all required income and other tax returns,

---

[4] The § 341 meeting was originally scheduled for April 3, 2014, BK Dkt.
No. 3; it was continued so that Defendants could verify their Social Security
numbers to Plaintiff, BK Dkt. No. 19.

MEMORANDUM OF DECISION – 4

both state and federal "within the time limits provided by law," 2) deliver

copies of all tax returns to the trustee, and 3) turn over all income tax

refunds "now held or hereafter received by you while the case is open."

*Id*.  The Income Tax Turnover Order warned the Defendants that their

failure to satisfy any of the requirements of the order could result in loss of

the right to a bankruptcy discharge, dismissal of the case, or other

sanctions.  *Id*.  During the trial, Michael[5] admitted that Defendants

received the copy of that order mailed to them by the Clerk.

The need to comply with the Income Tax Turnover Order's terms

was emphasized by Plaintiff at the Defendants' § 341 meeting of creditors.

At the meeting, Plaintiff first inquired whether Defendants had given him

a correct copy of their 2013 returns,[6] to which Defendants answered in the

affirmative.  He then asked if they anticipated receiving tax refunds, and

Defendants again answered affirmatively.  The examination proceeded:

---

[5]  The Court occasionally refers to Defendants by their first names for clarity; no disrespect is intended.

[6]  Though married, Defendants apparently filed separate tax returns.

MEMORANDUM OF DECISION – 5

TRUSTEE:    And you understand that you need to turn those over to
me when you get 'em?

MR. ANDERSON:  Yes.

TRUSTEE:  Don't cash the check just turn [']em over.  I'm gonna
give you back these tax returns that you sent to me.

MR. ANDERSON:  Um, may I make a note on those?  Um, on mine
due to a overdue child support they won't send
me a check.

TRUSTEE:  [O]k, they'll send you something.  Send that to me.

MR. ANDERSON:  Yeah they'll send me a statement, yeah.

TRUSTEE:    Send that to me. . . .

Exh. 107 at p. 3 (parentheticals in original).

At some unspecified time after the § 341 meeting, Michael received a

state tax refund check in the amount of $392.  Exh. 100 at p. 7.  This was

unusual because, as he referenced in his creditor meeting testimony, he

assumed he was short in the amount of child support he had paid that

year, and the State of Idaho regularly withheld his state tax refund check

to cover the shortage.  When Michael unexpectedly received the state tax

refund check pursuant to his 2013 tax return, rather than turning it over to

MEMORANDUM OF DECISION – 6

Plaintiff, he cashed the check and paid the funds to his ex-spouse as child

support.  Melissa was expecting a refund from the state in the amount of

$1,218, but was later informed by the State that she would not be receiving

a refund.

Defendants' 2013 federal tax returns were filed on April 15, 2014,

but were returned to Defendants in late June 2014, because Defendants

had not signed them.  The returns indicated Michael was to receive a

$1,501 refund, and Melissa was to receive a $3,081 refund.  *See* Exhs. 100,

101.  While the reason remains a mystery to the Court, Defendants waited

to re-file those returns with the Internal Revenue Service until January

2015, and the refunds had not yet been received as of the date of trial.[7]

On May 14, 2014, Plaintiff filed a Motion for Turnover in the

bankruptcy case.  BK Dkt. No. 25.  In the motion, Plaintiff asked the Court

to order Defendants to turn over the $1,353.69 from the Credit Union

account ending in 1001, and $185.83 from the account ending in 2055.  *Id*.

---

[7] According to a status report filed by Plaintiff on February 27, 2015, after trial, Defendants received their 2012 federal tax refund checks and turned them over to Plaintiff.

MEMORANDUM OF DECISION – 7

Defendants filed no response to the turnover motion, and on June 11, 2014,

the Court granted the motion ("Turnover Order").  BK Dkt. Nos. 35-36.  A

copy of the Turnover Order was mailed to Defendants by the Clerk.  BK.

Dkt. No. 37.

On August 8, 2014, Plaintiff sent a letter to Defendants demanding

turn over of the funds in the Credit Union accounts as required by the

Turnover Order, as well as compliance with the Income Tax

Turnover Order.  Exh. 106.  Defendants were given ten days to comply,

and if they did not, the letter indicated Plaintiff would file an adversary

proceeding against them.  *Id.*  A copy of the Income Tax Turnover Order

and the Turnover Order were attached to the letter.  Michael admitted that

Defendants received this letter.

Having received no response from Defendants, on September 10,

2014, Plaintiff commenced this timely[8] adversary proceeding against them.

---

[8] On May 14, 2014, Plaintiff filed a motion to delay entry of Defendants'
discharge, BK Dkt. No. 26, which motion was granted on May 19, 2014, BK Dkt.
No. 27.  On August 11, 2014, the day before the extended deadline to object to
entry of discharge, Plaintiff filed a second motion to delay entry of Defendants'
discharge, BK Dkt. No. 40, which was granted that same day, BK Dkt. No. 41.

MEMORANDUM OF DECISION – 8

Dkt. No. 1.  Defendants filed an answer on October 9, 2014.  Dkt. No. 6.

### Conclusions of Law and Disposition

In § 727(a)(6)(A), the Code provides that the Court "shall grant the

debtor a discharge, unless . . . the debtor has refused, in the case . . . to

obey any lawful order of the court, other than an order to respond to a

material question or to testify." § 727(a)(6)(A).  An order is lawful if it is

issued by a court with jurisdiction over the subject matter, and the person

to whom the order is directed.  *See Rainsdon v. Leiser (In re Leiser)*, 2014 WL

3548929, at *3-4 (Bankr. D. Idaho 2014).   Here, Plaintiff alleges that

Defendants should not be granted a discharge because they refused to

obey both the Court's Income Tax Turnover Order, and the Turnover

Order.

"A claim for denial of discharge under § 727 is construed liberally

and in favor of the discharge and strictly against a person objecting to the

discharge." *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP

2005) (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342

(9th Cir. 1986)); *United States Trustee v. Hymas (In re Hymas)*, 10.4 IBCR 114,

MEMORANDUM OF DECISION – 9

119 (Bankr. D. Idaho 2010) (quoting *Retz v. Samson (In re Retz)*, 606 F.3d

1189, 1196 (9th Cir. 2010)). The party seeking to deny a debtor's discharge

bears the burden of proof, and the standard is a preponderance of the

evidence. *Grogan v. Garner*, 498 U.S. 279, 289 (1991); *Searles v. Riley (In re

Searles)*, 317 B.R. 368, 376 (9th Cir. BAP 2004), *aff'd*., 212 Fed. Appx. 589 (9th

Cir. 2006). Once a trustee produces sufficient evidence to demonstrate a

basis to deny the debtor a discharge under § 727(a), the burden shifts to

the debtor to explain his or her behavior to the Court's satisfaction. *Hicks

v. Decker (In re Hicks)*, 2006 WL 6810987, at *8 (9th Cir. BAP Feb. 1, 2006);

*Fitzgerald v. Williams (In re Williams)*, 1994 WL 675628, at *3 (Bankr. D.

Idaho Nov. 10, 1994). As the case law explains, the trustee's burden in this

context is twofold:

> A trustee seeking to revoke [or deny] a discharge
> pursuant to §§ 727(d)(3) and (a)(6)(A) requires a
> showing that the debtor (a) was aware of the
> order; and (b) willfully or intentionally refused to
> obey the order (i.e., something more than a mere
> failure to obey the order through inadvertency,
> mistake or inability to comply). *Smith v. Jordan
> (In re Jordan)*, 521 F.3d 430, 434 (4th Cir. 2008).

MEMORANDUM OF DECISION – 10

*Schwarzkopf v. Goodrich (In re Michaels)*, 2009 WL 7809926, at *5 (9th Cir.

BAP Feb. 27, 2009).

The Court will consider the Plaintiff's allegations separately.

A.    The Income Tax Turnover Order

A debtor's "right to receive a tax refund constitutes an interest in

property." *Newman v. Schwartzer (In re Newman)*, 487 B.R. 193, 198 (9th Cir.

BAP 2013 ) (quoting *Nichols v. Birdsell*, 491 F.3d 987, 990 (9th Cir. 2007)).

Clearly, then, a debtor's tax refunds are property of the bankruptcy estate.

§ 541(a)(1), (5), (7); *Johnson v. Taxel (In re Johnson)*, 178 B.R. 216, 218 (9th

Cir. BAP 1995); *In re Espinoza*, 03.3 IBCR 185, 186 (Bankr. D. Idaho 2003).

Moreover, as the Court has explained:

> Section 521(4) requires a debtor to "surrender to the trustee all
> property of the estate."  While an order of the court is not
> necessary to enforce unambiguous statutory commands, it has
> been the long standing practice of this Court to "reinforce" the
> Code, and remove any confusion or ambiguity, by issuing and
> serving on each debtor [an Income] Tax Order, which
> explicitly requires turnover of tax refunds and of copies of the
> tax returns upon which those refunds are based.

*In re Espinoza,* 03.3 IBCR at 186 (internal footnotes omitted).

MEMORANDUM OF DECISION – 11

In this case, it is undisputed that Defendants knew of their

obligation to turn over any tax refunds they received to Plaintiff.  They

were so advised via the Court's Income Tax Turnover Order, which they

acknowledge receiving, and Plaintiff reminded them of this obligation

again at the § 341 meeting of creditors.  Finally, Plaintiff sent Defendants a

letter dated August 8, 2014, urging them to properly file tax returns within

the time limits provided by law, to turn over copies of those returns to

Plaintiff, and then to surrender any refunds they received.  Defendants

acknowledged at trial that they received these notices and understood

their responsibilities.  Even so, Defendants elected to use  Michael's state

tax refund to pay child support, rather than remit it to Plaintiff as has been

ordered by the Court.

Michael testified that he believed this course of action was

acceptable from the discussion he had with Plaintiff at the § 341(a)

creditors meeting.  The Court acknowledges that Michael might have felt

this was a logical choice because his state tax refunds normally were

withheld and paid applied by the State to his child support obligation.

MEMORANDUM OF DECISION – 12

However, what is significant here is that he deliberately *chose* to do

something contrary to the Court's order.  Moreover, the § 341(a) meeting

transcript does not bear out Defendants' contention that it was acceptable

for him to take the state refund check he might receive and remit it to his

ex-spouse for child support.

  In addition, Michael acknowledged the he intentionally waited to

refile the previously rejected 2013 federal returns until January 6, 2015, just

prior to trial, because Defendants wanted this Court to sort out

Defendants' obligations with regard to the repayment of funds in the

Credit Union accounts, given the timing of the Mountain America check.

Again, this was a specific choice which contravened the Court's order

requiring that tax returns be filed within the time limits provided by law.

  There is no suggestion from Defendants that they failed to obey the

order due to inadvertency, mistake, or inability to comply.  Rather, their

choices were deliberate and calculated, and are sufficient to satisfy the

standard for denial of discharge under § 727(a)(6)(A).   On this record,

while they have offered excuses for deciding not to comply with the

MEMORANDUM OF DECISION – 13

Court's order, Plaintiff has shown that Defendants were aware of the

Court's order, and that, for their own reasons, they willfully and

intentionally decided to do something other than obey the order.

    B.    The Turnover Order

    Defendants' failure to turn over the funds in the two Credit Union

accounts apparently resulted from their lack of understanding of basic

bankruptcy law.  This is not a comment on Defendants' intelligence, but

merely a reminder that it would have served them well to seek the counsel

of a bankruptcy attorney, as the murky waters of bankruptcy law can

sometimes be difficult to navigate without expert help.

    It is hornbook bankruptcy law that any funds in a debtor's financial

account on petition day become part of the debtor's bankruptcy estate.

*Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 432 B.R. 812, 818 (9th Cir.

BAP 2010) ("Deposits in the debtor's bank account become property of the

estate under section 541(a)(1))", *aff'd* 764 F.3d 1168 (9th Cir. 2014).  The

cases also hold that where, as here, a debtor's check is written (and even

delivered to another) prior to the bankruptcy filing, but does not clear the

MEMORANDUM OF DECISION – 14

account until after the petition is filed, the estate is entitled to the funds in the account on the date of filing. *Shapiro v. Henson*, 739 F.3d 1198, 1204 (9th Cir. 2014); In *re Wolfe*, 13.2 IBCR 47, 48 (Bankr. D. Idaho 2013).

On this record, Defendants have run afoul of this precedent as to the funds in the Credit Union account ending in 1001. Before filing their bankruptcy petition, Debtors wrote and tendered a check to the repossessing creditor to get their vehicle back, and sought confirmation from the Credit Union that the check would clear their checking account the following day. While the Credit Union assured them that it would clear the day after, for some reason, the funds were not debited from Defendants' account for two days – one day after the petition was filed. Defendants offer no reason why the funds in the account ending in 2055 were never turned over.

Regardless of Defendants' intentions, there is no gray area in the law on this point. Because the funds remained in Defendants' accounts at the time they filed their bankruptcy petition, Plaintiff was entitled to recover those funds from them. Because of this, and in light of the binding

MEMORANDUM OF DECISION – 15

precedents, the Court entered the Turnover Order. Plaintiff has met his

burden to prove that Defendants were aware of the Court's order and

wilfully or intentionally refused to obey it.

Hoping to avoid the consequences of not paying these funds over to

Plaintiff, Defendants attempted to place evidence before the Court that

Michael had spoken to someone in Plaintiff's office, and inquired about

whether he could make installment payments to Plaintiff. However,

Plaintiff testified he has no record of any such conversation, nor did he

recollect Defendants' call to his office. Moreover, while Plaintiff testified

that he does occasionally allow debtors to repay bank account balances or

tax refunds via a payment plan, the decision to enter into such an

arrangement is clearly a matter subject to Plaintiff's discretion. Finally,

based upon Defendants' testimony, it appeared Defendants had no ability

to pay over the funds to Plaintiff in installments. In other words, at best,

Michael's testimony, if believed, would establish only that he sought the

opportunity to make payments, and not that Plaintiff agreed to any such

arrangement.

MEMORANDUM OF DECISION – 16

In summary, the funds in the Credit Union accounts ending in 1001 and 2055, in the amounts of $1,353.69 and $185.83 respectively, were property of the bankruptcy estate.  Defendants were obliged to turn over these funds to Plaintiff.  *See* § 542(a); *In re Shapiro*, 739 F.3d at 1204. Defendants knew of this obligation, and also were aware that the Court had ordered them to do so in the Turnover Order.  Defendants' decision not to pay over these sums to Plaintiff, and to instead, wait until trial to address their obligations under the Turnover Order was ill-considered, and amounts to a willful and intentional refusal to obey the order.  Failure to comply with the Court's Turnover Order provides an adequate basis upon which to deny Defendants' a discharge in their bankruptcy case, as well as for a money judgment for those amounts due to the Plaintiff.

*Conclusion*

Plaintiff met his burden of proof under § 727(a)(6)(A) to show that Defendants refused to obey the lawful orders of the Court.  Defendants presented insufficient evidence to explain their noncompliance. Accordingly, a denial of discharge is warranted under these

MEMORANDUM OF DECISION – 17

circumstances.  In addition, the Court will enter judgment in favor of

Plaintiff and against Defendants in the amount of $1,889.52, representing

the $1,539.52 in the two Credit Union accounts on petition day, plus $350

for the cost of filing the adversary proceeding.[9]

     A separate judgment will be entered.

Dated:  March 2, 2015

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

     [9] Plaintiff sought a judgment for these costs in the complaint.
While the Court approved Plaintiff's request to defer payment of the $350
filing fee because there were no funds in the estate to do so, Dkt. No. 2,
now that Plaintiff has and will recover funds for the estate, and the Court
has determined Plaintiff is entitled to the relief sought in the complaint,
judgment will be entered against Defendants for these costs.

MEMORANDUM OF DECISION – 18