# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re: <br><br> **MICHAEL V. ANDERSON,** <br> **and MELISSA K. ANDERSON,** <br><br> Debtors. | **Bankruptcy Case** <br> **No. 14-40180-JDP** |

_____

| | |
|---|---|
| **GARY L. RAINSDON,** <br> **TRUSTEE,** <br><br> Plaintiff, <br><br> vs. <br><br> **MICHAEL V. ANDERSON,** <br> **and MELISSA K. ANDERSON,** <br><br> Defendants. | **Adv. Proceeding** <br> **No. 14-8053-JDP** |

_____

### AMENDED MEMORANDUM OF DECISION
_____

AMENDED MEMORANDUM OF DECISION – 1

**Appearances:**

    Michael V. Anderson and Melissa K. Anderson, Ammon, ID, pro se.

    Gary L. Rainsdon, chapter 7 trustee, Twin Falls, ID, pro se.

This Amended Memorandum of Decision supersedes the Court's prior Memorandum Decision entered in this case.[1]

## *Introduction*

This case presents the unhappy situation where the chapter 7[2] debtors, without seeking advice of counsel, mistimed the filing of their bankruptcy petition and, for flawed reasons, elected not to comply with the

---

[1] On March 2, 2015, the Court entered a Memorandum Decision and Order indicating Plaintiff was entitled to a judgment in the amount of $1,189.52, Dkt. No 23, and Judgment was entered in that amount, Dkt. No. 24. Subsequently, Plaintiff brought a motion seeking amendment of the Judgment, indicating the $392 representing the state tax refund was incorrectly excluded from the Judgment amount. Dkt. No. 25. Defendants filed no response to the motion. Accordingly, this Amended Memorandum Decision is entered to correct that oversight.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

AMENDED MEMORANDUM OF DECISION – 2

Court's orders entered in their bankruptcy case. As a result of their actions, the debtors are not entitled to a discharge.

Chapter 7 trustee, Gary L. Rainsdon ("Plaintiff") commenced this adversary proceeding against debtors Michael V. Anderson and Melissa K. Anderson ("Defendants") seeking a denial of their discharge and a money judgment for the funds they failed to turn over to him that were property of the bankruptcy estate. A trial was held on January 14, 2015, at which the parties appeared, pro se; following its conclusion, the Court took the issues under advisement. The Court has now considered the testimony, evidence, and the parties' arguments, as well as the applicable law. This Memorandum constitutes the Court's findings of fact and conclusions of law and decision in this action. Fed. R. Bankr. P. 7052.

*Findings of Fact*

On March 5, 2014, Defendants had their 2001 Pontiac Bonneville repossessed by a creditor. Exh. 107, p. 4. That same day, they wrote a check on their East Idaho Credit Union ("Credit Union") checking account in the amount of $1,116 to the repossessing creditor in order to regain

AMENDED MEMORANDUM OF DECISION – 3

possession of the vehicle.[3] *Id.*; Exh. 102. Despite assurances from the Credit Union that the check to the creditor would clear their account on March 6, it did not actually clear until March 7. On March 6, 2014, Defendants filed their chapter 7 bankruptcy petition.[4] BK Dkt. No. 1. Thus, at the time they filed the petition, the $1,116 remained in the Credit Union account. *Id*.

On April 21, 2014, a continued[5] § 341(a) meeting of creditors was held. During that meeting, Plaintiff explained to Defendants that on petition day, the Credit Union account ending in 1001 held $1,353.69 and a second account ending in 2055 at the same institution held $185.83. Exh. 107, pp. 8-9; *see also* Exhs. 102, 103. The following exchange then occurred:

---

[3] The amount necessary to recover the vehicle was actually $1,400, but as Defendant Michael Anderson testified, he "cleaned out" the Credit Union Account, and used other funds in order to come up with the necessary payment.

[4] Case No. 14-40180-JDP. The Court refers to the docket in the bankruptcy case as "BK Dkt." in order to distinguish it from the docket in this adversary proceeding.

[5] The § 341(a) meeting was originally scheduled for April 3, 2014, BK Dkt. No. 3; it was continued so that Defendants could verify their Social Security numbers to Plaintiff, BK Dkt. No. 19.

AMENDED MEMORANDUM OF DECISION – 4

> TRUSTEE: So yeah, I need to have that money turned over $1353.69 from the one account and $185.83 from the other account.
>
> MR. ANDERSON: Ok we will have to see what we an do to get you that.

*Id*.

As in every chapter 7 case filed in this District, on the same day the petition was filed, in this case March 6, 2014, an Income Tax Turnover Order was issued by the Court to Defendants. BK Dkt. No. 8. By its terms, it required Defendants to: 1) file all required income and other tax returns, both state and federal "within the time limits provided by law," 2) deliver copies of all tax returns to the trustee, and 3) turn over all income tax refunds "now held or hereafter received by you while the case is open." *Id*. The Income Tax Turnover Order warned the Defendants that their failure to satisfy any of the requirements of the order could result in loss of the right to a bankruptcy discharge, dismissal of the case, or other sanctions. *Id*. During the trial, Michael[6] admitted that Defendants

---

[6] The Court occasionally refers to Defendants by their first names for clarity; no disrespect is intended.

AMENDED MEMORANDUM OF DECISION – 5

received the copy of that order mailed to them by the Clerk.

The need to comply with the Income Tax Turnover Order's terms was emphasized by Plaintiff at the Defendants' § 341(a) meeting of creditors.  At the meeting, Plaintiff first inquired whether Defendants had given him a correct copy of their 2013 returns,[7] to which Defendants answered in the affirmative.  He then asked if they anticipated receiving tax refunds, and Defendants again answered affirmatively.  The examination proceeded:

> TRUSTEE:   And you understand that you need to turn those over to me when you get 'em?
>
> MR. ANDERSON:  Yes.
>
> TRUSTEE:  Don't cash the check just turn [']em over.  I'm gonna give you back these tax returns that you sent to me.
>
> MR. ANDERSON:  Um, may I make a note on those?  Um, on mine due to a overdue child support they won't send me a check.
>
> TRUSTEE:  [O]k, they'll send you something.  Send that to me.
>
> MR. ANDERSON:  Yeah they'll send me a statement, yeah.

---

[7] Though married, Defendants apparently filed separate tax returns.

AMENDED MEMORANDUM OF DECISION – 6

>   TRUSTEE:   Send that to me. . . .

Exh. 107 at p. 3 (parentheticals in original).

At some unspecified time after the § 341(a) meeting, Michael received a state tax refund check in the amount of $392. Exh. 100 at p. 7. This was unusual because, as he referenced in his creditor meeting testimony, he assumed he was short in the amount of child support he had paid that year, and the State of Idaho regularly withheld his state tax refund check to cover the shortage. When Michael unexpectedly received the state tax refund check pursuant to his 2013 tax return, rather than turning it over to Plaintiff, he cashed the check and paid the funds to his ex-spouse as child support. Melissa was expecting a refund from the state in the amount of $1,218, but was later informed by the State that she would not be receiving a refund.

Defendants' 2013 federal tax returns were filed on April 15, 2014, but were returned to Defendants in late June 2014, because Defendants had not signed them. The returns indicated Michael was to receive a $1,501 refund, and Melissa was to receive a $3,081 refund. *See* Exhs. 100,

AMENDED MEMORANDUM OF DECISION – 7

101. While the reason remains a mystery to the Court, Defendants waited to re-file those returns with the Internal Revenue Service until January 2015, and the refunds had not yet been received as of the date of trial.[8]

On May 14, 2014, Plaintiff filed a Motion for Turnover in the bankruptcy case. BK Dkt. No. 25. In the motion, Plaintiff asked the Court to order Defendants to turn over the $1,353.69 from the Credit Union account ending in 1001, and $185.83 from the account ending in 2055. *Id*. Defendants filed no response to the turnover motion, and on June 11, 2014, the Court granted the motion ("Turnover Order"). BK Dkt. Nos. 35-36. A copy of the Turnover Order was mailed to Defendants by the Clerk. BK. Dkt. No. 37.

On August 8, 2014, Plaintiff sent a letter to Defendants demanding turn over of the funds in the Credit Union accounts as required by the Turnover Order, as well as compliance with the Income Tax Turnover Order. Exh. 106. Defendants were given ten days to comply,

---

[8] According to a status report filed by Plaintiff on February 27, 2015, after trial, Defendants received their 2012 federal tax refund checks and turned them over to Plaintiff.

AMENDED MEMORANDUM OF DECISION – 8

and if they did not, the letter indicated Plaintiff would file an adversary proceeding against them. *Id.* A copy of the Income Tax Turnover Order and the Turnover Order were attached to the letter. Michael admitted that Defendants received this letter.

Having received no response from Defendants, on September 10, 2014, Plaintiff commenced this timely[9] adversary proceeding against them. Dkt. No. 1. Defendants filed an answer on October 9, 2014. Dkt. No. 6.

### *Conclusions of Law and Disposition*

In § 727(a)(6)(A), the Code provides that the Court "shall grant the debtor a discharge, unless . . . the debtor has refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify." § 727(a)(6)(A). An order is lawful if it is issued by a court with jurisdiction over the subject matter, and the person to whom the order is directed. *See Rainsdon v. Leiser (In re Leiser)*, 2014 WL

---

[9] On May 14, 2014, Plaintiff filed a motion to delay entry of Defendants' discharge, BK Dkt. No. 26, which motion was granted on May 19, 2014, BK Dkt. No. 27. On August 11, 2014, the day before the extended deadline to object to entry of discharge, Plaintiff filed a second motion to delay entry of Defendants' discharge, BK Dkt. No. 40, which was granted that same day, BK Dkt. No. 41.

AMENDED MEMORANDUM OF DECISION – 9

3548929, at *3-4 (Bankr. D. Idaho 2014). Here, Plaintiff alleges that Defendants should not be granted a discharge because they refused to obey both the Court's Income Tax Turnover Order, and the Turnover Order.

"A claim for denial of discharge under § 727 is construed liberally and in favor of the discharge and strictly against a person objecting to the discharge." *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986)); *United States Trustee v. Hymas (In re Hymas)*, 10.4 IBCR 114, 119 (Bankr. D. Idaho 2010) (quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010)). The party seeking to deny a debtor's discharge bears the burden of proof, and the standard is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289 (1991); *Searles v. Riley (In re Searles)*, 317 B.R. 368, 376 (9th Cir. BAP 2004), *aff'd.*, 212 Fed. Appx. 589 (9th Cir. 2006). Once a trustee produces sufficient evidence to demonstrate a basis to deny the debtor a discharge under § 727(a), the burden shifts to the debtor to explain his or her behavior to the Court's satisfaction. *Hicks*

AMENDED MEMORANDUM OF DECISION – 10

*v. Decker (In re Hicks)*, 2006 WL 6810987, at *8 (9th Cir. BAP Feb. 1, 2006); *Fitzgerald v. Williams (In re Williams)*, 1994 WL 675628, at *3 (Bankr. D. Idaho Nov. 10, 1994). As the case law explains, the trustee's burden in this context is twofold:

> A trustee seeking to revoke [or deny] a discharge pursuant to §§ 727(d)(3) and (a)(6)(A) requires a showing that the debtor (a) was aware of the order; and (b) willfully or intentionally refused to obey the order (i.e., something more than a mere failure to obey the order through inadvertency, mistake or inability to comply). *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 434 (4th Cir. 2008).

*Schwarzkopf v. Goodrich (In re Michaels)*, 2009 WL 7809926, at *5 (9th Cir. BAP Feb. 27, 2009).

The Court will consider the Plaintiff's allegations separately.

A. <u>The Income Tax Turnover Order</u>

A debtor's "right to receive a tax refund constitutes an interest in property." *Newman v. Schwartzer (In re Newman)*, 487 B.R. 193, 198 (9th Cir. BAP 2013 ) (quoting *Nichols v. Birdsell*, 491 F.3d 987, 990 (9th Cir. 2007)). Clearly, then, a debtor's tax refunds are property of the bankruptcy estate.

AMENDED MEMORANDUM OF DECISION – 11

§ 541(a)(1), (5), (7); *Johnson v. Taxel (In re Johnson)*, 178 B.R. 216, 218 (9th Cir. BAP 1995); *In re Espinoza*, 03.3 IBCR 185, 186 (Bankr. D. Idaho 2003). Moreover, as the Court has explained:

> Section 521(4) requires a debtor to "surrender to the trustee all property of the estate." While an order of the court is not necessary to enforce unambiguous statutory commands, it has been the long standing practice of this Court to "reinforce" the Code, and remove any confusion or ambiguity, by issuing and serving on each debtor [an Income] Tax Order, which explicitly requires turnover of tax refunds and of copies of the tax returns upon which those refunds are based.

*In re Espinoza,* 03.3 IBCR at 186 (internal footnotes omitted).

In this case, it is undisputed that Defendants knew of their obligation to turn over any tax refunds they received to Plaintiff. They were so advised via the Court's Income Tax Turnover Order, which they acknowledge receiving, and Plaintiff reminded them of this obligation again at the § 341(a) meeting of creditors. Finally, Plaintiff sent Defendants a letter dated August 8, 2014, urging them to properly file tax returns within the time limits provided by law, to turn over copies of those returns to Plaintiff, and then to surrender any refunds they received.

AMENDED MEMORANDUM OF DECISION – 12

Defendants acknowledged at trial that they received these notices and understood their responsibilities. Even so, Defendants elected to use Michael's state tax refund to pay child support, rather than remit it to Plaintiff as has been ordered by the Court.

Michael testified that he believed this course of action was acceptable from the discussion he had with Plaintiff at the § 341(a) creditors meeting. The Court acknowledges that Michael might have felt this was a logical choice because his state tax refunds normally were withheld and applied by the State to his child support obligation. However, what is significant here is that he deliberately *chose* to do something contrary to the Court's order. Moreover, the § 341(a) meeting transcript does not bear out Defendants' contention that it was acceptable for him to take the state refund check he might receive and remit it to his ex-spouse for child support.

In addition, Michael acknowledged that he intentionally waited to refile the previously rejected 2013 federal returns until January 6, 2015, just prior to trial, because Defendants wanted this Court to sort out

AMENDED MEMORANDUM OF DECISION – 13

Defendants' obligations with regard to the repayment of funds in the Credit Union accounts, given the timing of the Mountain America check. Again, this was a specific choice which contravened the Court's order requiring that tax returns be filed within the time limits provided by law.

There is no suggestion from Defendants that they failed to obey the order due to inadvertency, mistake, or inability to comply.  Rather, their choices were deliberate and calculated, and are sufficient to satisfy the standard for denial of discharge under § 727(a)(6)(A).  On this record, while they have offered excuses for deciding not to comply with the Court's order, Plaintiff has shown that Defendants were aware of the Court's order, and that, for their own reasons, they willfully and intentionally decided to do something other than obey the order.

### B. The Turnover Order

Defendants' failure to turn over the funds in the two Credit Union accounts apparently resulted from their lack of understanding of basic bankruptcy law.  This is not a comment on Defendants' intelligence, but merely a reminder that it would have served them well to seek the counsel

AMENDED MEMORANDUM OF DECISION – 14

of a bankruptcy attorney, as the murky waters of bankruptcy law can sometimes be difficult to navigate without expert help.

It is hornbook bankruptcy law that any funds in a debtor's financial account on petition day become part of the debtor's bankruptcy estate. *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 432 B.R. 812, 818 (9th Cir. BAP 2010) ("Deposits in the debtor's bank account become property of the estate under section 541(a)(1))", *aff'd* 764 F.3d 1168 (9th Cir. 2014). The cases also hold that where, as here, a debtor's check is written (and even delivered to another) prior to the bankruptcy filing, but does not clear the account until after the petition is filed, the estate is entitled to the funds in the account on the date of filing. *Shapiro v. Henson*, 739 F.3d 1198, 1204 (9th Cir. 2014); In *re Wolfe*, 13.2 IBCR 47, 48 (Bankr. D. Idaho 2013).

On this record, Defendants have run afoul of this precedent as to the funds in the Credit Union account ending in 1001. Before filing their bankruptcy petition, Debtors wrote and tendered a check to the repossessing creditor to get their vehicle back, and sought confirmation from the Credit Union that the check would clear their checking account

AMENDED MEMORANDUM OF DECISION – 15

the following day. While the Credit Union assured them that it would clear the day after, for some reason, the funds were not debited from Defendants' account for two days – one day after the petition was filed. Defendants offer no reason why the funds in the account ending in 2055 were never turned over.

Regardless of Defendants' intentions, there is no gray area in the law on this point. Because the funds remained in Defendants' accounts at the time they filed their bankruptcy petition, Plaintiff was entitled to recover those funds from them. Because of this, and in light of the binding precedents, the Court entered the Turnover Order. Plaintiff has met his burden to prove that Defendants were aware of the Court's order and wilfully or intentionally refused to obey it.

Hoping to avoid the consequences of not paying these funds over to Plaintiff, Defendants attempted to place evidence before the Court that Michael had spoken to someone in Plaintiff's office, and inquired about whether he could make installment payments to Plaintiff. However, Plaintiff testified he has no record of any such conversation, nor did he

AMENDED MEMORANDUM OF DECISION – 16

recollect Defendants' call to his office. Moreover, while Plaintiff testified that he does occasionally allow debtors to repay bank account balances or tax refunds via a payment plan, the decision to enter into such an arrangement is clearly a matter subject to Plaintiff's discretion. Finally, based upon Defendants' testimony, it appeared Defendants had no ability to pay over the funds to Plaintiff in installments. In other words, at best, Michael's testimony, if believed, would establish only that he sought the opportunity to make payments, and not that Plaintiff agreed to any such arrangement.

In summary, the funds in the Credit Union accounts ending in 1001 and 2055, in the amounts of $1,353.69 and $185.83 respectively, were property of the bankruptcy estate. Defendants were obliged to turn over these funds to Plaintiff. *See* § 542(a); *In re Shapiro*, 739 F.3d at 1204. Defendants knew of this obligation, and also were aware that the Court had ordered them to do so in the Turnover Order. Defendants' decision not to pay over these sums to Plaintiff, and to instead, wait until trial to address their obligations under the Turnover Order was ill-considered,

AMENDED MEMORANDUM OF DECISION – 17

and amounts to a willful and intentional refusal to obey the order. Failure to comply with the Court's Turnover Order provides an adequate basis upon which to deny Defendants' a discharge in their bankruptcy case, as well as for a money judgment for those amounts due to the Plaintiff.

*Conclusion*

Plaintiff met his burden of proof under § 727(a)(6)(A) to show that Defendants refused to obey the lawful orders of the Court. Defendants presented insufficient evidence to explain their noncompliance. Accordingly, a denial of discharge is warranted under these circumstances. In addition, the Court will enter judgment in favor of Plaintiff and against Defendants in the amount of $2,281.52, representing the $1,539.52 in the two Credit Union accounts on petition day, the $392 state tax refund, plus $350 for the cost of filing the adversary proceeding.[10]

---

[10] The Plaintiff sought a judgment for these costs in the complaint. While the Court approved Plaintiff's request to defer payment of the $350 filing fee because there were no funds in the estate to do so, Dkt. No. 2, now that Plaintiff has and will recover funds for the estate, and the Court has determined Plaintiff is entitled to the relief sought in the complaint, judgment will be entered against Defendants for these costs.

AMENDED MEMORANDUM OF DECISION – 18

A separate judgment will be entered.

Dated: March 11, 2015

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

AMENDED MEMORANDUM OF DECISION – 19